Eastern District of Kentucky
FILED
DEC 0 5 2007
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DISTRICT at LEXINGTON

CIVIL ACTION NO. 07-80-JMH

3D ENTERPRISES CONTRACTING
CORPORATION,                                          PLAINTIFF

V.          **MEMORANDUM OPINION AND ORDER**

NATIONAL ELECTRIC COMPANY, INC.,                      DEFENDANT

\* \* \* \* \* \* \* \* \* \*

## I. INTRODUCTION

Plaintiff 3D Enterprises Contracting Corporation (hereafter "3D") is a general construction contractor; defendant National Electric Company, Inc., (hereafter "NEC") submitted a bid to 3D offering to perform the electrical work for a project on which 3D was formulating a bid to submit to the Hallsdale-Powell Utility District known as the Beaver Creek Wastewater Treatment Facility Expansion-Contract 2 ("the Project"). 3D was the successful bidder on the Project; however, NEC subsequently declined to enter into a subcontract with 3D to perform the electrical work on the Project, even though 3D utilized NEC's bid concerning the electrical work on the Project in preparing its own bid for the Project.

This action stems from NEC's decision not to enter into a subcontract with 3D. However, 3D's cause of action against NEC is not for breach of contract. 3D seeks recovery from NEC under the theory of promissory estoppel.

This matter is before the court for resolution of 3D's motion to compel discovery from NEC.[1] This motion having been fully briefed, it is ripe for review.

---

[1] Pursuant to numerical paragraph 8 of the district court's Scheduling Order entered herein on May 21, 2007, all discovery disputes were referred to the Magistrate Judge for resolution. [DE #13].

## II. PLAINTIFF'S MOTION TO COMPEL DISCOVERY

3D's motion to compel concerns its discovery request that NEC provide it with copies of contracts that NEC has entered into during the course of the past five (5) years. NEC objected to that document request, arguing that said request seeks irrelevant information and is simply an overly broad, fishing expedition that serves no purpose, as there was never any meeting of the minds between the parties in this case. In reply, 3D submits that while it uses its own subcontract form, rather than the standard industry subcontract form, at this juncture, it is entitled to discover whether, during the past five years, NEC has always utilized the standard industry form in entering into subcontracts or whether defendant has ever deviated from that practice, since NEC claims that the reason that it decided not to enter into a subcontract with 3D was because 3D's proposed contract was not the standard industry subcontract form.

In order to resolve this discovery dispute, it is necessary to consider the factual background giving rise to this action, applicable case law, and the Federal Rules of Civil Procedure concerning discovery. The Magistrate Judge is mindful of the scope of discovery authorized by Fed.R.Civ.P. 26, subsequent to the 2000 amendment thereto, which permits "discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, . . ." It is also necessary to review the disputed discovery request and NEC's response thereto, all of which are set out below, starting first with the factual background:

### A.   Factual background

3D is engaged in the construction industry as a general contractor, constructing, among other projects, wastewater and water treatment plants for municipalities, counties and utility districts. In late 2006, 3D submitted a bid to be the general contractor on the Project. In the process of formulating its bid, 3D sought bids from various subcontractors, including NEC, concerning the electrical work that would have to be performed on the Project. On or about December 14, 2006, NEC submitted a bid to 3D, offering to perform the electrical scope of work on the Project.

3D used NEC's bid in preparing its own bid on the Project, and 3D was the successful bidder for the Project. After 3D learned that it had been awarded the Project, 3D notified NEC of that fact and of its intention to enter into a formal subcontract with NEC concerning performance of the electrical workscope on the Project that was the subject of NEC's bid submitted to 3D. Thereafter, on February 16, 2007, representatives of NEC met with representatives of 3D to discuss the performance of the electrical scope of work on the Project, and 3D presented NEC with a proposed Subcontract Agreement. By letter dated February 23, 2007, NEC advised 3D that it would not sign this proposed Subcontract Agreement for the following reasons: (1) "it is completely one-sided in favor of the general contractor and against the subcontractor," (2) "[t]here are numerous provisions in your contract which are objectionable to National Electric Company, Inc.," and, (3) "[w]e had expected an industry-standard agreement, such as an AIA subcontract or similar document." See Exhibit 1 to 3D's Motion to Compel Discovery [DE #35]. NEC's letter of February 23, 2007, also stated, as follows:

> In addition to the objectionable contract language, what we perceive as our scope of work on this project is different from yours. For example, most of our exclusions are not listed. Obviously, we must resolve all scope of work issues before we can consider entering into a contract for this project.
>
> Unless and until we receive an industry-standard contract and we resolve all scope of work issues for this project, you should not assume that we will contract with your firm for the work described in our bid dated December 14, 2006.

*Id.*

By letter dated March 2, 2007, 3D responded to NEC's letter of February 23, 2007, noting that it had informed NEC, during the bid phase for the Project, that 3D did not use the standard AIA subcontract form. Specifically, 3D's letter stated:

> . . . At no time during the bidding phase for this project did 3D agree to utilize an AIA subcontract form or similar document on this project, however we did commit to you that, "Terms and conditions will be negotiated by all parties which are fair to all." You agreed to this provision and provided 3D with your proposal for the electrical workscope for this project. 3D accepted your proposal, utilized your price in our bid, and listed National Electric Company, Inc., as the electrical Subcontractor for this project.

3

> While you were in 3D's office discussing this project, on Friday, February 16, 2007, I am advised that you discussed 3D's subcontract agreement with Mike Klein and Mike advised you that 3D had been using this subcontract agreement for over 20 years and has never found it necessary to deviate from this practice. Mike further advised you to itemize the concerns that National Electric Company has with 3D's subcontract agreement and provide those to us for consideration. The only formal communication we have had regarding this matter, since that conversation at 3D's office, was your February 23, 2007 letter. . . . However, we appreciate National Electrical Company's effort to "resolve all scope of work issues" by identifying specific items that were and were not included in their proposal, and as we have previously indicated, we are willing to consider revisions/additions to the appropriate sections of the subcontract agreement that National Electric would like for 3D to consider.

See Exhibit 2 to 3D's Motion to Compel Discovery [DE #35].

In conclusion, 3D's letter further stated:

> . . . we are more than willing to negotiate certain provisions of this subcontract, in an effort to arrive at an agreement that is fair to all. . . . We look forward to receiving your proposed revisions to the agreement and assure you that they will be given fair consideration. If you have anything further to discuss before we commence the detailed negotiation process, please advise.

Id.

In reply to 3D's letter of March 2, 2007, by letter dated March 6, 2007, NEC informed 3D that it would not be entering into a contract with 3D for this Project. Explaining the reasons for this decision, NEC stated:

> . . . 3D did not honor its commitment to provide us with a fair contract, and we are in no position to "rewrite" the contract you sent us to level the playing field, especially since the prices included in our December 14, 2006 bid are no longer valid. Our prices were valid for 75 days from the date we submitted the bid. The 75 days have run, and through no fault of ours, we still do not have a subcontract or an agreement on our scope of work.

See Exhibit 3 to 3D's Motion to Compel Discovery [DE #35].

**B.     The documents in dispute**

After this litigation ensued, on September 4, 2007, 3D served Interrogatories and Requests for Production of Documents ("RPD") to NEC. The discovery request at issue, RPD No. 4, and NEC's response thereto, are set out below:

> 4.     Any written contracts into which National has entered into [sic] within the past five (5) years.

4

> **RESPONSE:** Objection on the grounds that this Request is overly broad and will not led to the discovery of relevant or otherwise admissible evidence.

### Discussion/Analysis

Fed.R.Civ.P. 26 contains the general provisions governing discovery. Specifically, Fed.R.Civ.P. 26(b)(1) provides:

> **(1) In General.** Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. . . .

Fed.R.Civ.P. 26(b)(1).

In *Coleman v. American Red Cross*, 23 F.3d 1091 (6th Cir. 1994), the Sixth Circuit considered the scope of discovery after the 1993 amendments to Fed.R.Civ.P. 26, stating as follows:

> It is axiomatic that the "discovery of evidence, whether hearsay or not, is permitted if it is at all possible that it will lead to the discovery of admissible evidence." 4 James Wm. Moore, *Moore's Federal Practice* § 26.56[4]. Further, as we have previously noted, "[t]he scope of discovery is not limited to admissible evidence, but encompasses 'any matter, not privileged, which is relevant to the subject matter involved in the pending action.'" *Marshall v. Bramer*, 828 F.2d 355, 357-58 (6th Cir. 1987) (quoting Fed.R.Civ.P. 26(b)(1)). A court is not permitted to preclude the discovery of arguably relevant information solely because, if the information were introduced at trial, it would be "speculative" at best.

23 F.3d at 1097.

Thus, the court must first determine whether the documents in dispute are relevant to the claims or defenses raised herein. If the documents are not relevant, then they are not discoverable; however, if the documents are relevant, then they are discoverable unless they are privileged.

3D is proceeding against NEC under the theory of promissory estoppel. The foundation for this claim seems to be that (1) based on communications between 3D and NEC during the bid process and prior to NEC's decision to submit a bid to 3D concerning the subcontract to perform the electrical workscope on the Project, NEC knew that 3D did not utilize the AIA industry-standard form in entering into contracts with subcontractors, (2) in the face of that knowledge, NEC proceeded to submit a bid to 3D for the performance of the electrical workscope on the Project, (3)

5

3D used NEC's bid in formulating its own bid on the Project and identified NEC as the subcontractor that would be performing the electrical workscope on the Project, and (4) 3D was awarded the Project, based in part on NEC's bid. Thus, 3D's claim against NEC is premised on its assertion that NEC's refusal to proceed forward and honor its bid and enter into a subcontract with 3D after 3D was awarded the Project was without sufficient justification.

In objecting to 3D's motion to compel, NEC asserts that there never was a meeting of the minds[2] concerning the subcontract, and in NEC's answer to the complaint, NEC asserts that 3D's claims are barred by mutual mistake and that 3D has failed to mitigate its damages.

As pointed out above, in the correspondence between 3D and NEC after 3D was awarded the Project, NEC took the position that its reason for declining to enter into a subcontract to perform the electrical work on which it had bid was that 3D's subcontract form was unreasonable and that NEC had "never seen anything close" to 3D's subcontract form. One of NEC's stated defenses is that the subcontract form 3D sent to it was different from what NEC had anticipated. Thus, NEC's position seems to be that it only enters into subcontracts with general contractors if the general contractor uses the AIA industry-standard subcontract form and that since 3D did not utilize that form and would not agree to use that form after it was awarded the Project, NEC was not obligated to enter into a contract with 3D.

Given the communications between the parties prior to NEC's decision to submit a bid to 3D for the performance of the electrical work on the Project, and given the communications between the parties subsequent to 3D's being awarded the Project, the Magistrate Judge concludes that 3D is entitled to challenge NEC's current position that it only enters into subcontracts with general contractors that utilize the AIA industry-standard subcontract form. One way to assess the validity of NEC's position is to review all of NEC's prior contracts with general contractors to determine if all of those subcontracts are on the industry-standard AIA form. Requiring NEC to produce all of

---

[2] NEC's "meeting of the minds" argument misses the mark, as this is not an action for breach of contract; it is an action for promissory estoppel.

its prior contracts with general contractors arguably would be overly burdensome, depending on the length of time NEC has been a going business concern and on the sheer number of contracts involved. Thus, restricting the production of those contracts to a limited period of time seems to be a reasonable option, and the Magistrate Judge concludes that 3D's request for the production of those contracts covering the period of time for the past five (5) years is not unreasonable in these circumstances.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant NEC's objection to 3D's Document Request No. 4 is **OVERRULED**.

2. Plaintiff 3D's motion to compel discovery from the NEC [DE #35] is **GRANTED**.

3. Within ten (10) days of the date of this Order, NEC is directed to respond to 3D's RPD No. 4 by providing 3D with all written contracts into which it has entered with general contractors for a period of the past five (5) years.

This 5th day of December, 2007.

JAMES B. TODD,
UNITED STATES MAGISTRATE JUDGE